UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

AKO K. BURRELL,

                               Plaintiff,

      -against-                                       9:17-CV-0906 (LEK/TWD)

LISA ZUREK, *et al.*,

                               Defendants.

**DECISION AND ORDER**

**I.    INTRODUCTION**

Pro se plaintiff Ako Burrell filed this 42 U.S.C. § 1983 action alleging that his constitutional rights were violated while he was in pretrial custody at Oneida County Correctional Facility ("Oneida CCF"). This Court reviewed the sufficiency of Plaintiff's Complaint, Dkt. No. 1 ("Complaint"), pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A) and ordered that the following claims survived initial review: (1) Fourteenth Amendment excessive force, sexual abuse, and failure to intervene against Defendants Lieutenant Jack Breen, Deputy Dustin Lewis, and Deputy Jeffrey Jones; (2) First Amendment claims against Defendants Captain Lisa Zurek, Sergeant Clayton Smith, Lewis, and Jones stemming from denial of Plaintiff's access to newspapers and other reading material; (3) Fourteenth Amendment due process claims relating to Plaintiff's L-2 classification against Defendant Deputy Todd Woodland; and (4) First Amendment retaliation claims against Defendants Breen, Lewis, and Deputy Christopher Getchell. Dkt. No. 10 ("November 2, 2017 Order").

The parties conducted discovery and Defendants have now moved for Summary Judgment. Dkt. Nos. 41 ("Summary Judgment Motion"); 45 ("Response"); 46 ("Reply"); 47 ("Supplemental Response"). The Honorable Thérèse Wiley Dancks, United States Magistrate Judge, issued a Report-Recommendation and Order, recommending Defendants' Motion for Summary Judgment be granted in part and denied in part. Dkt. No. 50 ("Report-Recommendation"). Defendants timely filed objections to the Magistrate Judge's Report-Recommendation. Dkt. No. 51 ("Objections"). For the reasons that follow, the Court approves and adopts the Report-Recommendation.

## II.      RELEVANT BACKGROUND

The facts and allegations in this case were detailed in the November 2, 2017 Order and the Report-Recommendation, familiarity with which is assumed.

### A.      Magistrate Judge Dancks's Report-Recommendation

Magistrate Judge Dancks recommends granting summary judgment on: (1) the Fourteenth Amendment due process claims relating to Plaintiff's L-2 classification against Woodland; (2) the First Amendment retaliation claims against Breen, Lewis, and Getchell; and (3) all claims against Defendants in their official capacities. She recommends denying summary judgment on: (1) the Fourteenth Amendment excessive force, sexual abuse, and failure to intervene claims against Breen, Lewis, and Jones based on failure to exhaust administrative remedies; (2) the First Amendment denial of access to newspapers and other reading material claims against Zurek, Smith, Lewis, and Jones; and (3) the affirmative defense of qualified immunity raised by Zurek, Smith, Lewis, and Jones. She further recommended that Court conduct a hearing on the administrative exhaustion issue or refer the hearing to her to conduct. R & R at 33–34.

B.     **Defendants' Objection to the Report-Recommendation**

Defendants raise three objections to the Report-Recommendation: (1) Breen, Lewis, and Jones should have been granted summary judgment on Fourteenth Amendment excessive force, sexual abuse, and failure to intervene claims because Plaintiff failed to exhaust administrative remedies; (2) Zurek, Smith, Lewis, and Jones should have been granted summary judgment on the First Amendment claim based on denial of access to newspapers and other reading materials because this limitation had a legitimate penological basis; and (3) Zurek, Smith, Lewis, and Jones should have been granted summary judgment on qualified immunity grounds because it was objectively reasonable for them to believe the limitation on reading materials was constitutional. Objs.

## III.    LEGAL STANDARD

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). If objections are timely filed, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). However, if no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-857, 2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306–07 (N.D.N.Y. 2008), abrogated on other grounds by Widomski v. State Univ. of N.Y. at Orange, 748 F.3d 471 (2d Cir. 2014). "A [district] judge . . . may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b).

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

## IV.   ANALYSIS

After carful review of the papers and Magistrate Judge Dancks's Report-Recommendation, the Court finds no clear error in the unobjected-to portions of the Report-Recommendation. And after reviewing de novo the portions of the Report-Recommendation to which Defendants object, the Court finds no error. Magistrate Judge Danck's employed the proper legal standards, accurately recited the facts alleged, and correctly applies the law to those facts. As a result, the Court accepts and adopts the Report-Recommendation for the reasons stated therein.[1] The Court adds the following discussion of Defendants' three objections.

### A. Exhaustion of Fourteenth Amendment claims against Breen, Jones, and Lewis

On the issue of Plaintiff's Fourteenth Amendment claims, there is no dispute that Plaintiff was required to exhaust his administrative remedies, 42 U.S.C. § 1997e(a), that Plaintiff was required to file a formal grievance within five days of the incident complained about in order exhaust those remedies, Dkt. 41-4, Exhibit 1 ("Oneida County Sheriff's Office Policy") at 11,[2]

---

[1] As noted below, the while the Court reaches the same conclusion as the R & R on the issue of qualified immunity, its differs in its reasoning.

[2] The cited page numbers for documents refer to those generated by the Court's electronic filing system ("CM/ECF").

and that Plaintiff did not timely file a formal grievance. R & R at 18; Objs. at 2. Rather, the dispute hinges on whether Oneida CCF staff members prevented Plaintiff from timely filing a formal grievance. See Ross v. Blake, 136 S. Ct. 1850, 1858, 1860 (2016) ("Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies." A remedy is unavailable and thus exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.").

The alleged incidents giving rise to the excessive force, sexual abuse, and failure to intervene claims took place on March 30 and April 1, 2017. Plaintiff claims that after he filed informal complaints on April 2, 2017, grievance coordinator Robert Carollo was supposed to provide him with formal grievance forms but failed to do so. Pl.'s Resp. at 6. While Defendants do not provide evidence directly contradicting this claim, they counter that an April 7, 2017 Incident Report, No. 17-0678, documents that Plaintiff "improperly assigned his own numbers" to some grievances that he had submitted to Carollo. Objs. at 2; Dkt. No. 45-1 at 182 ("Incident Report, No. 17-0678"). Defendants state that after Plaintiff was informed he needed to re-file those grievances, Plaintiff did not "mak[e] any complaints of having been hindered in the process" and "waited a month, until May 6, 2017, when he filed additional Complaints regarding the same incidents." Id. However, as the incident report itself notes, Plaintiff apparently stated that Carollo was "a liar and that he didn't get the complaint forms." Incident Report, No. 17-0678. Thus, while Defendants claim Plaintiff is "using unsupported averments, to manufacture an issue of fact," Objs. at 4, the evidence suggests Plaintiff had at least raised the issue of not being provided the formal grievance forms at the time.

5

Defendants' suggest that "the fact that Plaintiff was thoroughly versed in grievance procedures, having filed 178 of them" indicates that Plaintiff alone was responsible for his failure to file a formal timely grievance in this case. Objs. at 2 n.2; SJ Mot. at 7 n.2. But this does not necessarily weaken Plaintiff's claims—his extensive history of filing grievances could also suggest that, absent interference, he was aware of the five day rule and capable of complying with it.

The R & R found that this dispute creates a genuine issue of material fact about whether Plaintiff's effort to administratively exhaust his claim was thwarted. R & R at 19. The Court agrees. See Ortiz v. Annucci, No. 17-CV-3620, 2019 WL 1438006, at *8 (S.D.N.Y. Mar. 29, 2019) ("If, in fact, Plaintiff timely attempted to file his grievance by handing it to an officer while in SHU and that officer failed to file the grievance, Plaintiff's avenues for pursuing the grievance would be unavailable . . . excusing him from any further exhaustion requirements."). However, as the burden is on Plaintiff to show unavailability of the grievance procedure, Jenkins v. Cordero, No. 17-CV-1592, 2019 WL 2121655, at *3 (S.D.N.Y. May 15, 2019) (citing Mojias v. Johnson, 351 F.3d 606, 610 (2d Cir. 2003)), and there remains "confusion regarding whether the [grievance process] was available to Plaintiff," R & R at 19, the Court also agrees that a hearing on the exhaustion issue would be beneficial, and refers the hearing Judge Dancks to conduct.

**B. First Amendment Claims again Zurek, Smith, Lewis, and Jones for denial of access to reading materials**

Defendants argue that denying Plaintiff all reading materials except a Bible, Koran, or holy book on account of his L-2 Classification did not violate the First Amendment because it

6

was "based on legitimate penological interests."[3] Objs. at 4. The R & R correctly assessed whether this was a "reasonable" limitation on Plaintiff's First Amendment rights by applying Turner v. Safley, 482 U.S. 78, 89–91 (1987). See Young v. Scott, No. 16-CV-44, 2017 WL 3662443, at *6 (M.D. Fla. Aug. 24, 2017), reconsideration denied, No. 16-CV-44, 2018 WL 1805147 (M.D. Fla. Apr. 17, 2018) (applying Turner factors to First Amendment claim raised by pre-trial detainee); Mauro v. Arpaio, 188 F.3d 1054, 1059 (9th Cir. 1999) (same). Under Turner, the Court assesses four factors to determine whether a regulation is reasonable: 1) whether "there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; 2) "whether there are alternative means of exercising the right that remain open to prison inmates"; 3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates"; and 4) whether there is "an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests." Turner 482 U.S. at 89–91 (internal quotations omitted).

With respect to the first and fourth factors, Defendants state "there was a clear relationship to a legitimate government interest in the good order of the Facility" and "it is difficult to imagine a less onerous alternative means in the circumstances for the Correction Facility to have acted in relation to Plaintiff." Objs. at 7. But Defendants are unable to

---

[3] As detailed in the R & R, L-2 classification was for inmates "reclassified 'due to their propensity towards facility violence and/or repeated non-compliance with facility rules and regulations' . . . Inmates on L2 status were, among other things, restricted to one hour of recreation a day or one and a half hours five days a week, limited to non-contact visits at special times, allowed limited telephone calls and commissary privileges, and allowed no books other than the Bible, Koran, or Holy book." R & R at 5. Plaintiff was placed on L-2 status on December 26, 2016, after an incident in which he injured a guard. See Dkt. No. 41-4 at 56 ("Incident Report"). The classification was abolished in August 2017 after the Citizen's Policy and Complaint Review Council ("CPCRC") determined that the restrictions violated New York Regulations. See Dkt. No. 41-4 at 121–22 ("CPCRC Letter").

substantiate these conclusory claims. Their Objection asserts that the regulations "were intended to give inmates who were determined . . . to be prone to conduct inimical to good order, an incentive to correct their behavior," Id. at 6, but the only citation for this is the Affidavit of Deputy Woodland, which merely states that the L-2 classification was "intended to ensure the safety and good order of the Facility" and makes no direct claims about how limiting reading materials promotes good behavior. Dkt. No. 41-5 ("Woodland Affidavit") ¶ 16. Defendants' reliance on Beard v. Banks, 548 U.S. 521 (2006), which upheld limitations on the most uncooperative prisoners' access to reading materials on the grounds that such limitations could incentivize good behavior, is misplaced. In that case, the defendants "articulated connections between newspapers and magazines, the deprivation of virtually the last privilege left to an inmate, and a significant incentive to improve behavior."[4] Id. at 531–32. Here, in contrast, as the Report-Recommendation correctly notes, Defendants "failed to identify specific legitimate penological interests for the ban." R & R at 22. Further, despite the Beard defendants' acknowledgment that they were depriving prisoners of "virtually the last privilege left," the regulations were still more generous than the L-2 regulations at issue here, as they allowed for "legal and personal correspondence, religious and legal materials, two library books, and writing paper." Id. at 526.

The second factor also favors Plaintiff because there was no apparent alternative means for Plaintiff to exercise his First Amendment rights. While Defendants state that Plaintiff could have modified his behavior and been reclassified during the monthly classification review,

---

[4] The Beard court further noted that "[t]he undisputed facts statement added that the Policy encourages progress and discourages backsliding by level 1 inmates. These statements point to evidence that the regulations serve the function identified." Beard v. Banks, 548 U.S. 521, 522 (2006).

Plaintiff states that Woodland told him "you have 19 felonies, you might never come off this status." Compl. ¶ 59. Finally, on the third factor, Defendants' assertion that "allowing Plaintiff to escape any consequences of having injured an officer could well have an undesirable 'ripple effect' on the behavior of other inmates" is unpersuasive as it provides no explanation for why anything short of a blanket deprivation on reading materials would be "allowing Plaintiff to escape any consequences." Objs. at 7.

Thus, while Courts "must accord substantial deference to the professional judgment of prison administrators," Overton v. Bazzetta, 539 U.S. 126, 132 (2003), Defendants' failure to articulate any specific justification means this case follows the "general rule" that "[a]bsolute bans on inmate access to newspapers and magazines . . . violate the First Amendment because they are an 'exaggerated response' to legitimate penological needs." Nelson v. Hjorth, No. 18-CV-88, 2018 WL 2050571, at *6 (D. Neb. May 2, 2018) (quoting Mann v. Smith, 796 F.2d 79, 82 (5th Cir. 1986)).

**C. Qualified Immunity for First Amendment claims against Defendants Zurek, Smith, Lewis, and Jones**

Defendants' Objections raises only one ground on which they are entitled to qualified immunity: "it was objectively reasonable for them to believe" that "the limitations imposed by L-2 status were indeed proper penologically-based restrictions" because the L-2 classification "had remained in place and operation unquestioned for over 20 years." Objs. at 8. Defendants do not, however, cite any cases to back the assertion that because a policy has been in effect for a long time, it is objectively reasonable to believe it is constitutional. And the Second Circuit has held a defendant's actions can be objectively unreasonable even if that defendant was following a

policy. See Sorensen v. City of New York, 42 F. App'x 507, 510–11 (2d Cir. 2002) (affirming denial of qualified immunity and rejecting defendants' argument "that they were simply low-level employees following orders and that it was objectively reasonable for them to believe that a policy promulgated by the City was constitutional . . . immunity has been granted [in such cases] only when the orders were facially valid . . . The strip-search policy at issue here, however, had twice been declared unconstitutional by this court, and so was not facially valid.")[5,6] Thus, Defendants are not entitled to qualified immunity at this time.

### V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 50) is **APPROVED and ADOPTED in its entirety**, except that Defendants' assertion they are entitled to qualified immunity is denied because they have not shown that their compliance with a longstanding policy was objectively reasonable; and it is further

---

[5] Defendants do not object to the Report-Recommendation's finding that a detainee's First Amendment right of access to reading material is "clearly established." R & R at 23–24 (citing Turner 482 U.S. at 89–90; Beard 548 U.S. at 535). The Court notes that because "public officials are held to constructive knowledge of the law, the issue here is not whether a reasonable person would have known what the law was, but simply whether the law was clearly established." Sorensen 42 F. App'x at 510.

[6] The R & R found that Defendants were not entitled to qualified immunity in part because there was a need for more fact finding about whether Zurek denied reading materials to punish Plaintiff's filing of a sexual abuse claim. R & R at 24 n.9. The Court notes that because it is denying summary judgment based on qualified immunity on the grounds that Defendants have not shown that their reliance on a longstanding policy is per se objectively reasonable, the Court does not rely on the Report-Recommendations reasoning on the issue of qualified immunity. Not relying the ambiguity of Zurek's motivations does not, of course, preclude additional fact finding on the issue should it be relevant.

**ORDERED**, that Defendants' Motion for Summary Judgment (Dkt. No. 41) on all claims asserted against them in their official capacities is **GRANTED**; and it is further

**ORDERED**, that Defendants Woodland and Getchell's Motion for Summary Judgment is **GRANTED**; and it is further

**ORDERED**, that Defendants Breen and Lewis's Motion for Summary Judgment on Plaintiff's First Amendment retaliation claims is **GRANTED**; and it is further

**ORDERED**, that Defendants' Motion for Summary Judgment is **DENIED** with respect to Plaintiff's Fourteenth Amendment claims for excessive force, sexual abuse, and failure to intervene against Defendants Breen, Jones, and Lewis; and it is further

**ORDERED**, that Defendants' Motion for Summary Judgment is  **DENIED** with respect to Plaintiff's First Amendment claims for denial of access to reading material against Defendants Zurek, Smith, Lewis, and Jones; and it is further

**ORDERED**, that Defendants Motion for Summary Judgement is **DENIED** with respect to Defendants Zurek, Smith, Lewis, and Jones's assertion of qualified immunity, without prejudice to reconsideration of the issue of qualified immunity at trial; and it is further

**ORDERED**, that Judge Dancks recommendation that a hearing be conducted on the issue of exhaustion is **GRANTED and REFERRED** to Judge Dancks to conduct; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   August 27, 2019
                Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge